Slip Op. 17-172

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LF USA, INC.,**<br><br>      Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>      Defendant. | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 16-00087** |

## OPINION

[Denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion for summary judgment.]

Dated: December 22, 2017
Amended: January 22, 2018

John Blaise Pellegrini, McGuireWoods, LLP, of New York, NY, for LF USA, Inc.

Jamie L. Shookman, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, of New York, NY, for defendant.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, and Amy M. Rubin, Assistant Director.  Of Counsel on the brief was Sheryl A. French, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

      Kelly, Judge:  The action before the court concerns the classification of imported children's clogs.  Plaintiff, LF USA, Inc., moves for summary judgment, requesting the court to find as a matter of law that Plaintiff's imports are properly classified within subheading 6401.99.80, Harmonized Tariff Schedule of the United States (2014)

("HTSUS"),[1] and requesting the court to order United States Customs and Border Protection ("CBP") to reliquidate the subject entries as such and refund the excess duties paid with interest. Pl.'s Mot. Summary J., July 7, 2017, ECF No. 21; Pl.'s Mem. Supp. Mot. Summary J., July 7, 2017, ECF No. 21-1 ("Pl.'s Br."). Defendant opposes the motion and cross-moves for summary judgment, requesting the court to find as a matter of law that the imports are properly classified within subheading 6402.99.31, HTSUS, within which CBP classified and liquidated the subject entries. Def.'s Cross Mot. Summary J., Aug. 14, 2017, ECF No. 25; Mem. Opp'n Pl.'s Mot. Summary J. and Supp. Def.'s Cross-Mot. Summary J., Aug. 14, 2017, ECF. No. 25 ("Def.'s Br."). For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

## BACKGROUND

At issue is the proper classification of six entries of children's clogs. Pl.'s Statement of Material Facts Not In Dispute ¶ 1, July 7, 2017, ECF No. 21-2 ("Pl.'s 56.3 Statement"); Def.'s Resp. Pl.'s Rule 56.3 Statement of Material Facts to Which There Is No Genuine Dispute ¶ 1, Aug. 14, 2017, ECF No. 25-1 ("Def.'s Resp. Pl.'s 56.3 Statement"). CBP classified and liquidated the subject entries under subheading 6402.99.31, HTSUS, Pl.'s 56.3 Statement ¶ 2; Def.'s Resp. Pl.'s 56.3 Statement ¶ 2, which provides:

> Other footwear with outer soles and uppers of rubber or plastics: Other footwear: Other: Other: Having uppers of which over 90 percent of the

---

[1] All references to the HTSUS refer to the 2014 edition, the most recent version of the HTSUS in effect at the time of the last entries of subject merchandise. See Pl.'s Statement of Material Facts Not In Dispute ¶ 1, July 7, 2017, ECF No. 21-2; Def.'s Resp. Pl.'s Rule 56.3 Statement of Material Facts to Which There Is No Genuine Dispute ¶ 1, Aug. 14, 2017, ECF No. 25-1. The 2011 and 2013 editions of the HTSUS, in effect respectively when Plaintiff entered the rest of the subject merchandise, are the same in relevant part to the 2014 edition.

> external surface area (including any accessories or reinforcements such as those mentioned in note 4(a) to this chapter) is rubber or plastics (except footwear having a foxing or a foxing-like band applied or molded at the sole and overlapping the upper and except footwear designed to be worn over, or in lieu of, other footwear as a protection against water, oil, grease or chemicals or cold or inclement weather): Other: Other.

Subheading 6402.99.31, HTSUS, dutiable at 6 percent.

Plaintiff timely filed administrative protests challenging CBP's classification of the subject merchandise under subheading 6402.99.31, HTSUS, and asserting that the proper classification for the entries is subheading 6401.99.80, HTSUS. Pl.'s 56.3 Statement ¶ 3; Def.'s Resp. Pl.'s 56.3 Statement ¶ 3. Subheading 6401.99.80, HTSUS, provides:

> Waterproof footwear with outer soles and uppers of rubber or plastics, the uppers of which are neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes: Other footwear: Other: Other: Other: Having uppers of which over 90 percent of the external surface area (including any accessories or reinforcements such as those mentioned in note 4(a) to this chapter) is rubber or plastics (except footwear having foxing or a foxing-like band applied or molded at the sole and overlapping the upper).

Subheading 6401.99.80, HTSUS, duty free. CBP denied Plaintiff's protests. Pl.'s 56.3 Statement ¶ 4; Def.'s Resp. Pl.'s 56.3 Statement ¶ 4.

Plaintiff commenced this action to contest CBP's denial of its protests. Summons, May 25, 2016, ECF No. 1; Compl., July 20, 2016, ECF No. 6. Plaintiff alleges that the subject merchandise was improperly classified within subheading 6402.99.31, HTSUS, and is instead classifiable within subheading 6401.99.80, HTSUS. Compl. ¶¶ 12–13. Specifically, Plaintiff alleges that the subject merchandise is classifiable within subheading 6401.99.80, HTSUS, id. at ¶ 13, because the shoes are waterproof and

complete and fully functional without the back strap, such that the strap is not an essential element of the upper. Pl.'s Br. 3, 7–13. Plaintiff contends that the shoe's backstrap is an "auxiliary element of the shoe," id. at 3, which does not assemble the upper, as would preclude classification within subheading 6401.99.80, HTSUS. Id. at 3, 8–10. Defendant contends that the shoes are not classifiable within subheading 6401.99.80, HTSUS, because they are not waterproof for classification purposes, the rubber strap is an essential part of the upper rather than an attachment, and the upper is assembled by riveting. See Def.'s Br. 7–19. Defendant argues that the shoes are precluded from classification within subheading 6401.99.80, HTSUS, and are accordingly properly classified within subheading 6402.99.31. Id. at 19–20.

**JURISDICTION AND STANDARD OF REVIEW**

The court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [Tariff Act of 1930, as amended, 19 U.S.C. § 1515 (2012)]," 28 U.S.C. § 1581(a) (2012), and reviews such actions de novo. 28 U.S.C. § 2640(a)(1) (2012).

The court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). In order to raise a genuine issue of material fact, it is insufficient for a party to rest upon mere allegations or denials, but rather that party must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastic Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006);

Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

**UNDISPUTED FACTS**

The subject merchandise, six entries of imports of children's clogs, entered at the port of Los Angeles between 2011 and 2014. Pl.'s 56.3 Statement ¶ 1; Def.'s Resp. Pl.'s 56.3 Statement ¶ 1. The clogs have a closed toe and open heel. Pl.'s 56.3 Statement ¶ 8; Def.'s Resp. Pl.'s 56.3 Statement ¶ 8. The clogs have "an upper and outer sole of rubber or plastics" and "a separate rubber or plastics heel strap," which is "attached" by "single rubber or plastic rivet at each end of the strap." Pl.'s 56.3 Statement ¶ 8; Def.'s Resp. Pl.'s 56.3 Statement ¶ 8. "The strap may be moved forward to rest on the front of the clog."[2] Pl.'s 56.3 Statement ¶ 9; Def.'s Resp. Pl.'s 56.3 Statement ¶ 9. The subject merchandise "does not provide protection against water, oil, grease, or chemicals or cold or inclement weather." Pl.'s 56.3 Statement ¶ 14; Def.'s Resp. Pl.'s 56.3 Statement ¶ 14.

---

[2] Plaintiff contends that "[t]here is agreement that the clog is complete and usable as footwear without the strap or with the strap moved forward to rest on the front of the clog." Pl.'s Br. 9. However, Defendant does not admit as an undisputed fact that the clog is complete and usable without the strap in place at the back of the heel. See Def.'s Resp. Pl.'s 56.3 Statement ¶ 12. Specifically, Defendant

> [a]vers that it is unclear what is meant by "complete" and "useable," as these terms are not defined. Admits that a user could wear the imported footwear without the rubber strap or with the strap moved forward to rest on the front of the clog, but avers that the strap is an essential part of the imported footwear because it "can be used to secure the shoe to the foot," and because a user's foot might slip out of the imported footwear if that person were to wear it without the strap, or with the strap moved forward to rest on the front of the clog.

Id. (citations omitted). Accordingly, the court does not consider the parties to be in agreement as to whether the clog is "complete and usable as footwear without the strap" in place at the back of the heel, despite Plaintiff's statement to the contrary. See Pl.'s Br. 9. This disagreement is not relevant to the court's determination of the case.

**DISCUSSION**

Classification involves two steps. First, the court determines the proper meaning of the tariff provisions, which is a question of law. See Link Snacks, Inc. v. United States, 742 F.3d 962, 965 (Fed. Cir. 2014). Second, the court determines whether the subject merchandise properly falls within the scope of the tariff provisions, which is a question of fact. Id. Where there is no genuine "dispute as to the nature of the merchandise, then the two-step classification analysis collapses entirely into a question of law." Id. at 965–66 (citation omitted). In such a case, the court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984). The court must find the correct classification, irrespective of the subheadings asserted by the parties. See id.

### A. The Meaning of the Tariff Terms

Classification of merchandise under the HTSUS is governed by the principles set forth in the General Rules of Interpretation ("GRIs") and the Additional United States Rules of Interpretation. See Roche Vitamins, Inc. v. United States, 772 F.3d 728, 730 (Fed. Cir. 2014). The GRIs are applied in numerical order beginning with GRI 1 which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes," La Crosse Technology, Ltd. v. United States, 723 F.3d 1353, 1358 (Fed. Cir. 2013), which are part of the HTSUS statute. BenQ Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011). The Additional U.S. Notes included within the Chapter Notes "'are legal notes that provide definitions or information

on the scope of the pertinent provisions or set additional requirements for classification purposes.'" Del Monte Corp. v. United States, 730 F.3d 1352, 1355 (Fed. Cir. 2013) (quoting What Every Member of the Trade Community Should Know About: Tariff Classification 32 (U.S. Customs & Border Prot. May 2004). These Additional U.S. Notes are also part of the legal text of the HTSUS, see Preface at 1 n.2, HTSUS, and are accordingly "statutory provisions of law." Del Monte Corp., 730 F.3d at 1355 (internal quotation marks omitted).

The terms of the HTSUS are "construed according to their common and commercial meanings, which are presumed to be the same." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing Simod Am. Corp. v. United States, 872 F.2d 1572, 1576 (Fed. Cir. 1989)). The court defines HTSUS tariff terms relying upon its own understanding of the terms and "may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." Carl Zeiss, Inc., 195 F.3d at 1379 (citation omitted). The court may also be aided by the Harmonized Commodity Description and Coding System's Explanatory Notes ("Explanatory Notes") to help construe the relevant chapters where appropriate. See StoreWALL, LLC v. United States, 644 F.3d 1358, 1363 (Fed. Cir. 2011). Although the "Explanatory Notes are not legally binding, [they] may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision." Roche Vitamins, 772 F.3d at 731.

Heading 6402, HTSUS, under which CBP liquidated Plaintiff's merchandise, covers "Other footwear with outer soles and uppers of rubber or plastics." Heading 6402, HTSUS. Heading 6401, HTSUS, covers "Waterproof footwear with outer soles and

uppers of rubber or plastics." Heading 6401, HTSUS. No other heading applies to footwear with outer soles and uppers of rubber or plastics. See Chapter 64, HTSUS. Heading 6402 is an "other" category for footwear with outer soles and uppers of rubber or plastics not classifiable within heading 6401.

The court must first look to the words of the tariff to discern its meaning. Plaintiff's preferred heading 6401, HTSUS, covers "[w]aterproof footwear with outer soles and uppers of rubber or plastics, the uppers of which are neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes." Heading 6401, HTSUS. Note 3 of the Additional U.S. Notes to Chapter 64 provides that "[f]or the purposes of heading 6401, 'waterproof footwear' means footwear specified in the heading, designed to protect against penetration by water or other liquids, whether or not such footwear is primarily designed for such purposes."[3] Additional U.S. Note 3, Chapter 64, HTSUS. Therefore, waterproof footwear must protect the foot by not allowing water or other liquid to penetrate the shoe. Plaintiff suggests a much narrower interpretation of the phrase "waterproof footwear." See Pl.'s Br. 7–8; see also Pl.'s Sur-

---

[3] Several dictionary definitions aid the court in discerning the common and commercial meaning of "waterproof." See Waterproof, Oxford English Dictionary Vol. XIX, 1003 (J.A. Simpson & E.S.C. Weiner eds., Oxford University Press, 2nd ed. 1989) (Waterproof: impervious to water; capable of resisting the deleterious action of water.); Waterproof, Webster's Third New International Dictionary 2584 (Philip Babcock Gove, Ph.D. and Merriam-Webster Editorial Staff eds., Merriam-Webster, Incorporated 1993) (Waterproof: 1a: impervious to water: as covered or treated with a material (as a solution of rubber) to prevent permeation by water.); Waterproof, oed.com, available at http://www.oed.com/view/Entry/226269?rskey=D3Xshs&result=1&isAdvanced=false#eid (last visited Dec. 19, 2017) (Waterproof: Impervious to water, impermeable; That is not damaged or washed away by water.); Waterproof, Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/waterproof (last visited Dec. 19, 2017) (Waterproof: Impervious to water; Especially: covered or treated with a material (such as a solution of rubber) to prevent permeation by water.).

Reply 2, Oct. 27, 2017, ECF No. 32-1. Plaintiff argues that the tariff language "the uppers of which are neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes" suggests that the term "waterproof footwear" refers only to the method of assembling the footwear. Pl.'s Br. 7–8 ("The limited scope of the prohibition strongly suggests that 'waterproof' refers to the means of assembly. It is not intended to mean that footwear must be impervious to water.").

In the phrase "waterproof footwear," the word "waterproof" modifies "footwear," not assembly or construction.[4] Therefore the footwear is what protects, not what is protected. Further, contrary to Plaintiff's position, the words of the heading indicate that the drafters envisioned two requirements for footwear covered within heading 6401: 1) that the footwear is waterproof, and 2) that the uppers are neither fixed to the sole nor assembled by any of the enumerated processes. See Heading 6401, HTSUS. This interpretation is reinforced by the accompanying Explanatory Notes, which provide that "[n]on-waterproof footwear [of rubber or plastics] produced in one piece (for example, bathing slippers)" are classifiable within heading 6402. Explanatory Note 64.02(f) to Chapter 64 (2014). By identifying "non-waterproof footwear" of rubber or plastics produced in one piece as a category distinct from waterproof footwear, the clarification indicates that, even if footwear is made of rubber or plastics and is of single piece construction (in which case the uppers are neither fixed to the sole nor assembled by any of the enumerated processes), the

---

[4] Further, the Explanatory Notes clarify that heading 6401 covers footwear "of rubber . . . , plastics or textile material with an external layer of rubber or plastics being visible to the naked eye . . ., provided the uppers are neither fixed to the sole nor assembled by the processes named in the heading." Explanatory Note 64.01 to Chapter 64 (2014) (emphasis in original). This phrasing also clarifies that the waterproof requirement does not refer to the method of assembly.

Court No. 16-00087                                                                                          Page 10

footwear must still also be waterproof to be classifiable within heading 6401. The Explanatory Note therefore confirms that there are two separate requirements to classification within heading 6401. It indicates that "waterproof footwear" means something more than footwear made of plastics or rubber. See Heading 6401, HTSUS. Accordingly, Plaintiff's more narrow interpretation of "waterproof footwear" is unpersuasive.[5]

Plaintiff also argues that a narrow interpretation of heading 6401 is necessary, contending that, without such an interpretation, subheading 6401.99, which provides for footwear "[d]esigned to be worn over, or in lieu of other footwear as a protection against water," would not make sense. See Pl.'s Br. 8. Plaintiff's theory seems to be that if all subheadings within heading 6401 were meant to be impervious to water, then this subheading would not be necessary. Plaintiff's argument ignores the fact that subheading 6401.99, HTSUS, identifies a special subset of waterproof footwear, i.e., footwear that is "designed to be worn over, or in lieu of, other footwear as protection against water, oil, grease or chemicals or cold or inclement weather." See Subheading 6401.99, HTSUS. Contrary to Plaintiff's suggestion, it is not illogical that there may be some footwear which is specifically designed to provide protective properties for the user, and that those styles of footwear would also be considered "waterproof footwear." Furthermore, Additional U.S. Note 3 to Chapter 64 specifies that "waterproof footwear" refers to footwear that is

---

[5] The court rejects Plaintiff's argument that "waterproof footwear" cannot mean "impervious to water" because "Heading 6401 includes HTSUS subheadings 6401.99.80 and 6401.99.90, both cover footwear that does not provide protection against water, i.e., footwear that is not impervious to water," see Pl.'s Br. 8, because it assumes the answer to the question at issue here: whether subheadings 6401.99.80 and 6401.99.90, HTSUS, require that the footwear be impervious to water.

Court No. 16-00087 Page 11

"designed to protect against penetration by water or other liquids, whether or not such footwear is primarily designed for such purposes." See Additional U.S. Note 3, Chapter 64, HTSUS. This phrasing recognizes that some waterproof footwear is primarily designed for waterproof protection while other waterproof footwear is not designed primarily to protect the wearer from water or other liquids, but nonetheless is designed to be waterproof.

Heading 6401 also requires that footwear be made of plastic or rubber uppers which are "neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes." Heading 6401, HTSUS. The HTSUS does not define "uppers," and the parties both proffer definitions for the term. Defendant supplied several sources to support its interpretation of "upper" as

> '. . . part of the shoe above the separate sole or that portion of the shoe which covers the sides and top of the foot if there is no separate sole. An "Upper" can cover the whole leg, thigh, hips, and chest (e.g., fishermen's chest waders) or can consist simply of straps, laces or thongs (e.g., Roman sandals).' This definition is confirmed by dictionaries, which define the "upper" as the part of the shoe above the sole that covers the top and sides of the foot.

Def.'s Br. 9 (quoting Footwear Definitions, Treasury Decision 93-88, 27 Cust. B. & Dec. 312, 312 (Oct. 25, 1993) ("Treasury Decision 93-88"); other citations omitted). Plaintiff "asserts that the upper is that part of a shoe covering the top and sides of the foot when the upper and sole are a unit." Pl.'s Reply Mem. Supp. Its Mot. Summary J. & Opp'n Def.'s Cross Mot. Summary J. 3, Sept. 14, 2017, ECF No. 26. Plaintiff quotes Treasury Decision 93-88 for the interpretation that "'[t]he "upper" is[]that portion of the shoe which covers the sides and top of the foot if there is no separate sole.'" Id. The definitions

provided by Plaintiff and Defendant are not at odds. The upper is the part of the shoe above the separate sole or that portion of the shoe which covers the sides and top of the foot if there is no separate sole. Footwear within heading 6401 must have uppers that are "neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes." Heading 6401, HTSUS. This language means that footwear covered by heading 6401 is not created using any of the prohibited processes to affix the sole to the upper or to assemble various parts of the upper.

Heading 6402, HTSUS, covers "[o]ther footwear with outer soles and uppers of rubber or plastics." Heading 6402, HTSUS. Heading 6401, HTSUS, covers waterproof footwear with outer soles and uppers of rubber or plastics. Heading 6401, HTSUS. As heading 6402 is an "other" category for footwear not classifiable within heading 6401, the meaning of the tariff term is dependent upon the meaning of heading 6401. "Other footwear with outer soles and uppers of rubber or plastics" refers to footwear with outer soles and uppers (the part of the shoe above the separate sole or that portion of the shoe which covers the sides and top of the foot if there is no separate sole) of rubber or plastics, which do not meet the definitions above for the tariff terms within heading 6401, HTSUS.

### B. The Merchandise at Issue

Here, there is no dispute as to the nature of the subject merchandise. The parties agree that the merchandise is children's clogs that have a closed toe and open heel. Pl.'s 56.3 Statement ¶¶ 6, 8; Def.'s Resp. Pl.'s 56.3 Statement ¶¶ 6, 8. The parties also agree that the footwear has "an upper and outer sole of rubber or plastics" and "a separate rubber or plastics heel strap," which is "attached" by a "single rubber or plastic rivet at

each end of the strap," Pl.'s 56.3 Statement ¶ 8; Def.'s Resp. Pl.'s 56.3 Statement ¶ 8, which "may be moved forward to rest on the front of the clog." Pl.'s 56.3 Statement ¶ 9; Def.'s Resp. Pl.'s 56.3 Statement ¶ 9. It is undisputed that the footwear "does not provide protection against water, oil, grease, or chemicals or cold or inclement weather." Pl.'s 56.3 Statement ¶ 14; Def.'s Resp. Pl.'s 56.3 Statement ¶ 14.

### C. The Proper Classification of the Goods

The first requirement of footwear covered within heading 6401, HTSUS, is that the footwear is waterproof. As discussed above, "waterproof footwear" is footwear that protects the foot by not allowing water or other liquid to penetrate the shoe. It is undisputed that "the subject footwear does not provide protection against water, oil, grease, or chemicals or cold or inclement weather." Pl.'s 56.3 Statement ¶ 14; Def.'s Resp. Pl.'s 56.3 Statement ¶ 14. Accordingly, the subject merchandise does not fit within the definition of "waterproof footwear," and, as a matter of law, the subject footwear is not classifiable as "[w]aterproof footwear" within heading 6401, HTSUS.

Additionally, footwear covered by heading 6401, HTSUS, must have uppers of plastics or rubber "which are neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes." Heading 6401, HTSUS. An "upper" is the part of the shoe above the separate sole or that portion of the shoe which covers the sides and top of the foot if there is no separate sole. The court does not need to reach the issue as to whether the subject merchandise is footwear having "uppers of plastics or rubber which are neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes" because the court has found that the subject

merchandise does not fit within definition of "waterproof footwear" such that it is not classifiable within heading 6401.[6]

## CONCLUSION

For the foregoing reasons, the subject merchandise at issue in this case is properly classifiable within subheading 6402.99.31, HTSUS. Therefore, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted. Judgment will enter accordingly.

      /s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:     December 22, 2017
              New York, New York

Amended:  January 22, 2018
              New York, New York

---

[6] Although the court does not reach the issue here, the court has serious concerns about whether, even if the footwear were determined to be waterproof, the subject merchandise would be classifiable within heading 6401 because of the heel strap. Footwear classifiable within heading 6401 must have uppers that are "neither fixed to the sole nor assembled by stitching, riveting, nailing, screwing, plugging or similar processes." Heading 6401, HTSUS. The court interprets this phrase to mean that footwear covered by heading 6401 does not use any of the prohibited processes to either affix the sole to the upper or to assemble various parts of the upper. The upper is that portion of the shoe which covers the sides and top of the foot. It is undisputed that the subject merchandise has a plastic or rubber upper with "a separate rubber or plastics heel strap," which is "attached" by "single rubber or plastic rivet at each end of the strap." Pl.'s 56.3 Statement ¶ 8; Def.'s Resp. Pl.'s 56.3 Statement ¶ 8. The strap appears to be part of the upper. It is undisputed that the strap is attached with riveting, see Pl.'s 56.3 Statement ¶ 8; Def.'s Resp. Pl.'s 56.3 Statement ¶ 8, and it is therefore likely that the strap would preclude the clog being classified in plaintiff's preferred subheading.